IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARRY SCHULTZ *
MATTHEW S. VIENS, *
 *
  Plaintiffs, *  Civil No.  JFM 06 CV 2016
 *
  v. *
 *
ALL-FUND, INC. and *
AMERIFUND FINANCIAL, INC. *
 *
  Defendants. *
    *****

## AMENDED OPINION

Plaintiffs Larry Schultz and Matthew S. Viens are former employees of defendants All-Fund, Inc. and Amerifund Financial, Inc. (collectively "All-Fund").  Plaintiffs claim that during the term of their employment they were improperly compensated in violation of both the minimum wage and overtime provisions of the Fair Labor Standards Act.  Plaintiffs further allege that defendants deducted $5,681.30 from plaintiffs' final paychecks in violation of the Maryland Wage Payment and Collection Act.  Plaintiffs' motion for summary judgment is granted on all counts.[1]

**I**

---

[1] Defendants have not challenged the amount of minimum wage and overtime damages claimed by plaintiff.  Nevertheless, I have conducted my own independent review of the calculations contained in the charts appended to plaintiffs' affidavits.  The calculations appear correct.  I do note that the amount of overtime compensation claimed by plaintiffs during the weeks that they received commission checks is quite high, but the claims appear proper in light of the language of 5 C.F.R. §§551.511 and 551.512.  Section 555.512 provides that an employee is entitled, as overtime pay, to "one-half times the employee's hourly regular rate of pay times all overtime hours worked."  Section 555.511, in turn, provides that an employee's "hourly regular rate is computed by dividing the total remuneration paid to an employee in the workweek by the total number of hours of work in the workweek for which such compensation was paid."

Schultz and Viens were employed as co-branch managers of defendants' Columbia, Maryland Branch Office.  Schultz was employed from August 10, 2004 through June 28, 2006, and Viens was employed from July 22, 2004 through July 22, 2006.  Plaintiffs' work focused primarily on originating mortgage loans.  Although two part-time workers were employed for a portion of plaintiffs' tenure at All-Fund, plaintiffs generally worked alone in the office.

Plaintiffs were paid on a straight commission basis for loans they originated.  If they did not close a loan, they did not receive any compensation for work performed on that loan.  There were multiple pay periods during plaintiffs' employment in which they did not receive any compensation at all from All-Fund, although they performed work during those pay periods.  Plaintiffs also allege that they consistently worked more than 40 hours per week, but they did not receive any overtime compensation for this work.

Neither All-Fund nor plaintiffs kept any record of the hours plaintiffs worked.  Schultz estimates that he worked 48 hours per week if he did not work on Saturday, and 54 hours per week if he did work on Saturday.  He also estimates that he worked more than half of the Saturdays during his employment.  Viens estimates that he worked between 45 and 49 hours per week, depending upon whether he worked on Saturday.  He further estimates that he worked more than one Saturday per month during the course of his employment.  Both plaintiffs have provided summarizations of the estimated hours worked each week of their employment with All-Fund in charts attached to plaintiffs' motion for summary judgment.  *See* Mot. for Summ. J., Ex. A.  Based on the foregoing facts, plaintiffs have alleged violations of both the overtime and minimum wage provisions of the Fair Labor Standards Act ("FLSA").

Plaintiffs were given 60 days prior written notice of the termination of their employment

by All-Fund on May 24, 2006.  All-Fund deducted $5,681.30 from plaintiffs' final paychecks for

legal expenses.  Plaintiffs had been sued by their former employer, Savings First Mortgage,

LLC, for allegedly breaching a restrictive covenant.  Although First Savings Mortgage did not

sue All-Fund, it did compel All-Fund to respond to a subpoena.  All-Fund incurred legal

expenses in connection with the subpoena, and it is those expenses that were deducted from

plaintiffs' paychecks.  Plaintiffs were represented by their own counsel, not All-Fund's counsel,

in the dispute with Savings First Mortgage, and the case has now been dismissed.  Plaintiffs seek

to recover the $5,681.30 as unpaid wages under the Maryland Wage Payment and Collection

Law.

## II

Defendants argue that plaintiffs were exempt from the requirements of the FLSA as

outside sales employees.  *See* 29 U.S.C. § 213(a)(1).  An employer asserts an exemption from the

requirements of the FLSA as an affirmative defense, and so bears the burden of proof to show

that the defense is applicable.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974).  The

Code of Federal Regulations states that in order to meet the requirements of the exemption an

employer must show that the employee is one

> 1) whose primary duty is:
>
> i) making sales within the meaning of section 3(k) of the Act, or
>
> ii) obtaining orders or contracts for services or for the use of
> facilities for which a consideration will be paid by the client or
> customer; and
>
> (2) who is customarily and regularly engaged away from the
> employer's place or places of business in performing such primary
> duty.

C.F.R. § 541.500.  In this case, the parties appear to agree that plaintiffs' primary duties involved making sales within the meaning of the exemption.

Plaintiffs argue, however, that they worked primarily from the branch office and were not regularly engaged in making sales outside of defendants' place of business.  The Code of Federal Regulations further defines what it means to be engaged in sales away from the employer's place of business:

> The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home.  Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls.  Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property.

C.F.R. § 541.502.

In this case, detailed affidavits submitted by both plaintiffs state that they spent the overwhelming majority of their time originating loans from within the branch office.  Schultz estimates that he spent over ninety percent of his total work time communicating with clients and potential clients by phone, e-mail, and in writing from within the office.  *See* Attachment to Mot. for Summ. J., Aff. of Larry Schultz at ¶ 5-6.  Schultz occasionally met with clients at the office. *Id.*  His affidavit states that during the 23 months of his employment he met with clients outside of the office less than five times.  *Id.*  Viens estimates that he spent almost all of his work time, more than ninety-nine percent, inside the branch office.  *See* Attachment to Mot. for Summ J., Aff. of Matthew Viens at ¶ 5-6.  He also communicated with clients by phone, email, and in writing, and occasionally met with clients at the office.  *Id.*  According to Viens, during his 24

months of employment, he met with clients outside of the office less than five times.  *Id.*

       The only evidence defendants have submitted in response to plaintiffs' affidavits is a one page affidavit from Gregg Harlow, defendants' Regional Manager and the direct supervisor for Schultz and Viens.  *See* Mem. in Response to Pl.'s Mot. for Summ. J., Aff. of Gregg Harlow at ¶ 2.  Harlow's affidavit states only that he called the branch regularly as part of his duties, and he recalls several occasions that neither Schultz nor Viens was in the office.  *Id.* at ¶ 3.  Harlow states that on several occasions he was told that either Schultz or Viens was out of the office meeting with a client or potential client.  *Id.*

       As noted above, a defendant bears the burden of proof to show that a particular employee is exempt from the requirements of the Fair Labor Standards Act.  In this case, defendants' evidence is insufficient as a matter of law to carry that burden of proof.  Defendants must prove that Schultz and Viens were "customarily and regularly" engaged in outside sales work.  Defendants offer only a general assertion that on some occasions Harlow called the branch office and was told that plaintiffs were away from the office on business.  When compared with the detailed affidavits submitted by Schultz and Viens, defendants' evidence is insufficient to create a genuine issue of material fact as to the question of whether plaintiffs engaged in outside sales work.  The Supreme Court has stated that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  No reasonable jury could find from the evidence submitted by defendants that plaintiffs customarily and regularly met with clients and conducted business outside of the branch office.  Plaintiffs are therefore not exempt employees under the FLSA.

### III

Defendants also argue that a genuine issue of material fact exists on the question of whether plaintiffs performed work for which they were not properly compensated.  When bringing a case for violations of the FLSA, plaintiffs bear the burden of proving that they did work for which they were not properly paid under the terms of the FLSA.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).  In this case, plaintiffs must prove that they worked hours for which they should have received minimum wage and/or overtime payments.

The Supreme Court has held that because an employer has a duty to keep records of employees' hours under the FLSA, if an employer fails to keep such records, an employee is not required to provide a precise accounting of the hours worked to prove a violation of the FLSA. *Id.* at 687.

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id*. at 687-88.  The Court found that it would be unfair to allow an employer to complain that the damages calculation lacks precision when a precise measurement is unavailable only because the employer failed to keep the records required by the FLSA.  *Id*. at 688.

Defendants argue that plaintiffs have provided no evidence to corroborate the "blanket statements" in their affidavits that they worked additional hours for which they were not

appropriately compensated.  *See* Mem. in Resp. to Pl.'s Mot. for Summ. J. at 3.  Defendants

concede that plaintiffs' testimony at trial may be sufficient to meet their burden of proving that

they were not fairly compensated for their work, but argue that plaintiffs have not provided

sufficient evidence to justify a grant of summary judgment.  *Id.*

The Fourth Circuit has found that an employee's testimony as to hours worked is

sufficient to meet the employee's burden to show that he worked additional hours for which he

was not fairly compensated.  *See Wirtz v. Durham Sandwich Co., Inc.*, 367 F.2d 810, 812 (4th

Cir. 1966); *see also Donovan v. Kentwood Dev. Co., Inc.*, 549 F. Supp. 480, 485 (D.Md. 1982)

("A prima facie case can be made through an employee's testimony giving his recollection of

hours worked.").  Plaintiffs need not "prove each hour of overtime work with unerring accuracy

or certainty," but plaintiffs must provide evidence from which the court can reasonably infer the

number of unrecorded hours worked.  *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 109 (4th Cir.

1988).[2]

In this case, plaintiffs have clearly put forth a *prima facie* case as to the hours they

worked.  Their affidavits are detailed, and their estimates of the total hours they worked follow

logically from their recollections of the average hours worked each week.  The burden thus shifts

to defendants to rebut the reasonable inferences as to hours worked drawn from plaintiffs'

evidence.  Defendants, however, have not even attempted to rebut plaintiffs' affidavits.  They

---

[2] *Compare McLaughlin v. Murphy*, 436 F. Supp. 2d 732, 738 (D.Md. 2005), *aff'd by McLaughlin v. Murphy*, 2007 U.S. App. LEXIS 15560 (4th Cir. 2007) (granting defendant's motion for summary judgment on the grounds that the plaintiff had not submitted sufficient evidence to prove the amount of overtime worked when the plaintiff's interrogatory response stated that he worked 47 hours a week, but he testified during his deposition both that he did not know how many hours he worked and that he worked an average of eight hours a day).

have submitted absolutely no evidence tending to show that the hours actually worked differed

from plaintiffs' estimates or that plaintiffs' estimates were somehow unreasonable or inflated.

Although there were no other full-time employees in the branch office, defendants could have

taken the depositions of the part-time employees as to the hours they witnessed plaintiffs

working.  Defendants also could have deposed plaintiffs.  Either of these strategies could have

uncovered evidence tending to cast doubt on the veracity of plaintiffs' affidavits.  Having failed

to take advantage of these discovery methods, defendants cannot now argue that there is a

genuine issue of material fact as to the hours plaintiffs worked.

## IV

Plaintiffs also request liquidated damages under the FLSA.  An employer who violates

the terms of the FLSA is "liable to the employee or employees affected in the amount of their

unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an

additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The Fourth Circuit has

held that a grant of liquidated damages is the "norm" in cases in which the FLSA is violated.

*Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).  However, "if the employer shows to the

satisfaction of the court that the act or omission giving rise to such action was in good faith and

that he had reasonable grounds for believing that his act or omission was not a violation of the

Fair Labor Standards Act," a court may refuse to award liquidated damages, or may award

liquidated damages in an amount less than that of the unpaid compensation.  29 U.S.C. § 260.

The employer "bears the plain and substantial burden of persuading the court by proof that his

failure to obey the statute was both in good faith and predicated upon such reasonable grounds

that it would be unfair to impose upon him more than a compensatory verdict."  *Wright v.*

*Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960).  The District of Maryland has held that good faith

implies "some duty to investigate potential liability under the [FLSA]."  *Rogers v. Savings First*

*Mortgage*, 362 F. Supp. 2d 624, 638 (D. Md. 2005) (citing *Reeves v. Int'l Telephone &*

*Telegraph Corp.*, 616 F.2d 1342 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981)).

  In this case, defendants submit a letter from the United States Department of Labor

("DOL") addressed to the President of the National Association of Mortgage Brokers

("Association").  Mem. in Resp. to Pl.'s Mot. for Summ. J., Ex. C.  The letter concludes that

certain sales force mortgage loan officers described by the President of the Association qualify

as exempt outside sales employees.  *Id.* at 1.  In coming to this conclusion, the DOL relies upon

the President's assertion that the employees in question "perform their work primarily outside

the office."  *Id.* at 4 (internal citation omitted).  The letter states: "Of course, sales force loan

officers who do not engage in outside sales activity as a normal and recurrent part of their

workweek fail to meet the exemption's requirements."  *Id.* (internal citation omitted).  The letter

makes clear that each individual loan officer must be separately evaluated to determine whether

he or she meets the requirements of an outside sales employee.  *Id.*

  Given the language of the DOL letter, defendants have not met their burden of

affirmatively demonstrating that they acted reasonably and in good faith in violating the FLSA.

Defendants bore some duty to investigate whether their employees actually met the description

of exempt employees contained in the DOL's letter.  The record, however, contains no evidence

that defendants made any attempt whatsoever to determine the extent to which plaintiffs worked

inside or outside the office.  Defendants were unreasonable in relying on the DOL's letter when

they had no knowledge whether or not their employees were the types of employees identified by

the letter.  Plaintiffs are therefore due liquidated damages in the same amount as their minimum

wage and overtime damages.

V

Defendants do not contest the merits of plaintiffs' Maryland Wage Payment and

Collection Act claim, but rather argue only that plaintiffs' employment agreement clearly

provides that the agreement is subject to and governed by the laws of Washington.  Therefore,

defendants claim that the Maryland Wage Payment and Collection Act does not apply to

plaintiffs.  Plaintiffs respond that this court has already held that the employment agreement does

not apply to plaintiffs' independent statutory claims and thus Maryland law should apply.

Paragraph Seven of the employment agreement states: "This Agreement shall be

construed and performed according to the laws of the United States of America and the State of

Washington." Mem. in Resp. to Pl.'s Mot. for Summ. J, Ex. A at 1.  Paragraph 24 then states:

> This agreement shall be subject to and governed by the laws of
> Washington, irrespective of the fact that a party is or may become
> a resident of a different state. . . . Both parties hereby agree that the
> Circuit Court of Pierce County, State of Washington, shall have
> the exclusive jurisdiction to hear and determine any and all
> disputes, controversies, or claims arising out of, or relating to this
> Agreement, or concerning the respective rights of the parties
> hereunder and, for such purposes, do hereby submit themselves to
> the sole personal jurisdiction of that Court.

*Id*. at 4.  This court held on February 9, 2007, that plaintiffs' claims did not arise out of or relate

to the employment agreement, and thus the forum selection clause contained in the employment

agreement was not controlling.  For the same reason, the choice of law clause mandating that

Washington law be applied to the agreement is irrelevant to the claims in this case.

The Maryland Wage Payment and Collection Act states that an employer may not deduct

-10-

wages from an employee's paycheck unless the deduction is ordered by a court, authorized in writing by the employee, allowed by the Commissioner, or made in accordance with any other law, rule, or regulation issued by a governmental unit.  Md. Code, Lab. & Empl. Article § 3-503. An employee may bring suit to recover improperly deducted wages under Section 3-507.1(a) of the same subtitle.  In this case, defendants do not make any argument or provide any evidence that they had a legal right to deduct their own attorney's fees from their employees' paychecks. Plaintiffs' motion for summary judgment is therefore granted as to plaintiffs' Maryland Wage Payment and Collection Act claims.[3]

Date: August 13, 2007

/s/
J. Frederick Motz
United States District Court Judge

---

[3] Plaintiffs have waived their right to treble damages under Section 3-507.1 of the same subtitle.  *See* Mot. for Summ. J. at 14.